SEMNAR & HARTMAN, LLP
Babak Semnar (SBN 224890)
bob@sandiegoconsumerattorneys.com
Jared M. Hartman (SBN 254860)
jared@sandiegoconsumerattorneys.com
400 S. Melrose Dr., Suite 209
Vista, CA 92081
Telephone: (619) 500-4187; Fax: (888) 819-8230

Attorneys for Plaintiff, MARY GREENLEE

**U.S. DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARY GREENLEE, individually and on behalf of all others similarly situated<br><br>vs.<br><br>EQUIFAX, INC.;<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br>**1. NEGLIGENCE,**<br>**2. NEGLIGENCE PER SE** |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THE HONORABLE U.S. DISTRICT COURT JUDGE:

Plaintiff, MARY GREENLEE, individually and on behalf of all others similarly situated, by and through her attorneys of record, hereby files this Class Action Complaint and allege as follows:

## INTRODUCTION

1. Plaintiff, by and through her attorneys, brings this action on behalf of herself individually, and also as a representative on behalf of all others similarly situated, to challenge the actions of Defendant EQUIFAX, INC. (hereinafter "Defendant"), for failing to ensure proper safe-keeping and protecting of confidential credit, financial, and personal information held in Defendant's possession when Defendant was the subject of

a data breach that has effected over 140 million consumers across the nation.

## JURISDICTION & VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $68.6 billion exclusive of penalties.

3. Venue is proper under 28 U.S.C. §1391 because a significant portion of consumers with credit and personal information stored by Equifax live within this District, and therefore witnesses reside herein, and because Defendant purposefully avails itself of this District by regularly doing business herein.

## PARTIES

4. Defendant is one of the largest consumer credit reporting agencies in the world, and is known as one of the “Big Three”, along with Experian and Trans Union.

5. Defendant’s primary business model is to collect and store personal and credit information upon virtually every person within the United States, including social security numbers, birth dates, home addresses, driver’s license information, credit card numbers, and financial account information.

6. As its role as one of the “Big Three”, Defendant is a multi-billion corporation and has its corporate headquarters at 1550 Peachtree Street NE, Atlanta, GA 30309.

7. Defendant sells the personal and financial information that it holds on consumers to business and governments worldwide for a variety of purposes.

8. Plaintiff is an individual consumer whose information was obtained during the data breach described in more detail below, and is therefore a victim of Defendant’s failures to maintain and protect her personal and confidential information in trust.

## FACTUAL ALLEGATIONS

9. Defendant has, at all times relevant, owed a legal duty to all consumers whose personal and confidential information it has held in its possession to use reasonable care

to protect such information from unauthorized access by third parties.

10.Defendant has, at all times relevant, been obligated to comply with laws that have been implemented to preserve the privacy of such information, and to notify consumers promptly if their information was disclosed to an unauthorized third party so that the consumers could promptly take whatever steps were necessary to protect themselves from becoming victims of identity theft.

11.Defendant has, at all times, known that its failure to protect such information from unauthorized access would cause serious risks of credit harm and identify theft.

12.On or about September 7, 2017, Defendant announced to the public that, sometime between May 2017 and July 2017, Defendant was the subject of a data breach by unknown third parties in which unauthorized individuals accessed Defendant's database and the names, Social Security numbers, addresses, financial information, and other personal information stored therein.

13.Defendant first claimed on September 7, 2017 that it discovered the unauthorized access on or about July 29, 2017.

14.However, it has since been revealed that Defendant was aware of an earlier breach sometime in March 2017.

15.Upon information and belief, Defendant failed to take the necessary precautions to protect and secure the compromised information so that Defendant could keep its operating costs low and increase profits.

16.Defendant knew and should have known that its failure to take necessary precautions to maintain adequate technological safeguards would eventually result in a massive data breach.

17.Upon information and belief, prior to May 2017, Defendant had experienced multiple data breach incidents in which consumers' personal information was compromised and accessed by unauthorized third parties.

18. Defendant could have and should have substantially increased the amount of money it spent to protect against such a data breach, but chose not to.

19. On or about September 7, 2017, Defendant announced that it had created a website for consumers to submit limited personal information in order to determine whether the consumer is one whose information was compromised.

20. On or about September 8, 2017, Plaintiff submitted her information to Defendant's website to determine if she was effected by the breach, and immediately received the result in the affirmative, that her information was compromised.

21. Plaintiff immediately felt feelings of fear, concern, and anxiety over the thought of whether all of her personal and financial information was now in the hands of an identity thief that might either sell her information to others and/or use her information to subject her to identity theft such as opening lines of credit in her name and/or accessing her bank accounts and directly stealing her monies therein.

22. Subsequently, Plaintiff learned that the website that Defendant created to supposedly help consumers monitor their credit contained a mandatory arbitration provision and mandatory class-action waiver, and was only offered as a free service for 12 months.

23. Therefore, Plaintiff learned that Defendant simply crafted a way to insulate itself from liability and public scrutiny within the public court system, and also found a way to make even more profits in the future from the consumers themselves by having them sign up for 12 months of free credit monitoring services but then forcing them to pay for any future credit monitoring services beyond those 12 months, all of which Plaintiff found to be despicable and egregiously offensive.

24. Plaintiff therefore does not trust Defendant with her information at all, and is even more frightened and anxious over the knowledge that Defendant will continue to hold and maintain her personal and financial information and continue to sell it to

anyone who claims to have a "legitimate business purpose", even though Defendant clearly has no regard or respect for the sanctity of Plaintiff's personal and financial information.

25.Plaintiff has also learned recently that, people who purchased credit-monitoring services from Defendant seeking added protection from fraud were among those who had their credit-card information stolen as part of the company's massive data breach, and in some cases, people who bought the monitoring products had first called Equifax to dispute information on their credit reports—such as credit cards or loans that are on their file but they didn't think they had signed up for and those people were then sold a credit-monitoring product as a safety measure, which further compels the conclusion that Defendant's primary business model is to place exclusive priority upon its own business profits over the protection of the consumers whose information it holds.

26.Plaintiff has also recently learned that Defendant's Chief Security Officer has a degree in music, and has never possessed sufficient qualifications to oversee security for such a massive amount of sensitive information on millions of people.

27.Defendant should have known that its own Chief Security Officer was not qualified for such a position, and should have placed someone more qualified in such a position after it has already suffered multiple data breaches in recent years.

28.As a direct result of Defendant's failures, Plaintiff has been forced to incur a loss of $29.95 per month to pay for credit monitoring services with myfico.com, which is a cost she otherwise would not have had to pay for but for this massive scandal that has subjected her to such great risk of victimization.

## CLASS ACTION ALLEGATIONS

29.Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 seeking injunctive and monetary relief for Defendant's systemic failure to safeguard personal information of Plaintiff and Class members.

30. Plaintiff seeks relief in her individual capacity and as a representative of all others who are similarly situated.

31. The "Nationwide Class" subject of Count I below is defined as all persons residing within the United States whose personal data Defendant collected and stored and whose personal information was placed at risk and/or disclosed in the data breach affecting Defendant from May to July 2017.

32. The "California Class" subject of Counts I and II below is defined as all persons residing within the State of California whose personal data Defendant collected and stored and whose personal information was placed at risk and/or disclosed in the data breach affecting Defendant from May to July 2017.

33. Excluded from either class are all attorneys for the class, officers, and members of Defendant, including officer and members of any entity with an ownership interest in Defendant, any judge who sits on this case, and all jurors and alternate jurors who sit on this case.

34. The exact number of aggrieved consumers can be determined based on Defendant's consumer database.

35. The Classes are each so numerous that joinder is impracticable.

36. Upon information and belief, each Class alone includes millions of consumers based on Equifax's estimate that its data breach affected million consumers nationwide.

37. Every aggrieved consumer suffered injuries as alleged in this complaint directly and proximately caused by Defendant's negligent failure to adequately protect its database from unauthorized access by third-parties.

38. Common questions of fact and law predominate over any questions affecting only individual Class members, which include the following:

a. Whether Defendant engaged in the wrongful conduct alleged herein;

b. Whether Defendant owed a duty to Plaintiff and Class Members to adequately protect their personal information;

c. Whether Defendant breached its duties to protect the personal information of Plaintiff and Class members;

d. Whether Defendant knew or should have known that their data security systems and processes were unreasonably vulnerable to attack;

e. Whether Plaintiff and Class members suffered damages as a result of Defendant's conduct, including increased risk of identity theft and loss of value of personal information and emotional distress and mental anguish; and

f. Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief.

39.Plaintiff's claims are typical of the claims of each Class because Plaintiff and each Class member has suffered risk of loss and credit harm and identity theft caused by Defendant's negligent failure to safeguard their data, the injuries suffered by Plaintiffs and each Class members are identical (i.e. the costs to monitor and repair their credit through a third-party service for at least 24 months), and Plaintiff's claims for relief are based upon the same legal theories as are the claims of the other Class members.

40. Plaintiff will fairly and adequately protect and represent the interests of the class because their claims are typical of the claims of each Class.

41. Plaintiff and each Class are represented by competent Class counsel who are experienced in consumer protection cases, and whose interests are not antagonistic or in conflict with any interests of each Class.

42. A class action is superior to other methods for fair and efficient adjudication of this case because common questions of law and fact predominate over

other factors affecting only individual members, and because individual actions will involve relatively small amounts of damages.

43. Furthermore, prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Classes, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

44. A class action will be an efficient method of adjudicating the claims of the class members who have suffered relatively small damages, as a result of the same conduct by Defendant.

45. In the aggregate, class members have claims for relief that are significant in scope relative to the expense of litigation.

46. The availability of defendant's consumer data will facilitate proof of class claims, processing class claims, and distributions of any recoveries.

**Requirements of Rule 23(b)(2)**

47. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the proposed Classes by failing to take necessary steps to safeguard Plaintiff's and Class members' personal information.

48. Defendant's systemic conduct justifies the requested injunctive and declaratory relief with respect to each Class.

49. Injunctive, declaratory, and affirmative relief are predominant forms of relief sought in this case.

50. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of Defendant's failure to safeguard consumers' personal information.

51. In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Defendant's failure to secure such information.

**COUNT I**

**NEGLIGENCE**
**(On Behalf of Nationwide and California Classes)**

52. Plaintiff repeats, realleges, and incorporates by reference all preceding as though set forth fully herein.

53. Defendant owed a duty to Plaintiff and Members of each Class to exercise reasonable care in safeguarding their sensitive personal information.

54. Such a duty included, among other things, designing, maintaining, monitoring, and testing security systems, protocols, and practices to ensure that Class Members' information was adequately secured and protected from unauthorized access, and to implement intrusion detection processes that would detect a data breach in a timely manner.

55. Defendant breached its duties by such conduct that includes, but is not limited to, the following: (a) failing to implement and maintain adequate data security practices to safeguard Class Member's personal information; (b) failing to detect and terminate the data breach in a timely manner; and (c) failing to disclose that Defendant's data security practices were inadequate to safeguard Class Member's PII.

56. But for Equifax's breach of its duties, Class Member's PII would not have been accessed by unauthorized individuals.

57. Plaintiff and Class Members were foreseeable victims of Equifax's inadequate data security practices.

58. Defendant knew or should have known that a breach of its data security systems would cause damages to Class Members.

59. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members suffered, and will continue to suffer, significant injury including, but not limited, to inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm.

60. Plaintiff and Class Members must more closely monitor their financial accounts and credit histories to guard against identity theft, including incurring on an indefinite basis out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft.

61. Furthermore, by failing to timely discover and provide clear notification of the data breach to Plaintiff and Class Members, Defendant has prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their personal information.

62. The damages to Plaintiff and the Class Members were a direct, proximate, reasonably foreseeable result of Equifax's breaches of its duties.

63. Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT II

## NEGLIGENCE PER SE
## (On Behalf of California Class Only)

64. Plaintiff repeats, realleges, and incorporates by reference all preceding as though set forth fully herein.

65. Defendant owed a duty to Plaintiff and Members of each Class to exercise reasonable care in safeguarding their sensitive personal information.

66. Such a duty included, among other things, designing, maintaining, monitoring, and testing security systems, protocols, and practices to ensure that Class Members' information was adequately secured and protected from unauthorized access,

and to implement intrusion detection processes that would detect a data breach in a timely manner.

67. At all times relevant, Defendant has always been obligated to follow the following statutes under California law, with respect to California residents: California Financial Information Privacy Act, Cal. Fin. Code § 4050 et seq., and the California Customer Records Act, Cal. Civ. Code § 1798.80, et seq.

68. Defendant's failure to comply with these applicable laws and regulations, constitutes negligence per se.

69. Defendant breached its duties by such conduct that includes, but is not limited to, the following: (a) failing to implement and maintain adequate data security practices to safeguard Class Member's personal information; (b) failing to detect and terminate the data breach in a timely manner; and (c) failing to disclose that Defendant's data security practices were inadequate to safeguard Class Member's personal information.

70. But for Defendant's breach of its duties, Class Member's personal information would not have been accessed by unauthorized individuals.

71. Plaintiff and Class Members were foreseeable victims of Defendant's inadequate data security practices.

72. Defendant knew or should have known that a breach of its data security systems would cause damages to Class Members.

73. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members suffered, and will continue to suffer, significant injury including, but not limited, to inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm.

74. Plaintiff and Class Members must more closely monitor their financial accounts and credit histories to guard against identity theft, including incurring on an

indefinite basis out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft.

75. Furthermore, by failing to timely discover and provide clear notification of the data breach to Plaintiff and Class Members, Defendant has prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their personal information.

76. The damages to Plaintiff and the Class Members were a direct, proximate, reasonably foreseeable result of Equifax's breaches of its duties.

77. Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the respective Classes, prays that this Court:

1. Certify this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed Classes;

2. Designate Plaintiff as a Class Representative;

3. Designate Plaintiffs' counsel of record as Class Counsel for each Class;

4. Declare and adjudge that Defendant's policies, practices, and/or procedures challenged herein are illegal and in violation of the rights of the respective Plaintiffs, Class Representative, and members of the Nationwide and California Classes;

5. Issue a permanent injunction against Defendant and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives, and any and all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiff, Class Representative, members of the Nationwide and California Classes, and those similarly situated as secured by law;

6. Order injunctive relief requiring Defendants to strengthen their data security systems that maintain personal information to comply with the applicable state laws alleged herein and best practices under industry standards; engage third-party auditors and internal personnel to conduct security testing and audits on Defendant's systems on a periodic basis; promptly correct any problems or issues detected by such audits and testing; and routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

7. Award compensatory, consequential, incidental, and statutory damages, restitution, and disgorgement to Plaintiffs, Class Representative, and members of the Classes, in an amount to be determined at trial;

8. Order Defendant to make whole the Plaintiff, Class Representative, and members of the Classes by providing them with any other monetary and affirmative relief;

9. Order Defendant to pay all costs associated with Class notice and administration of Class-wide relief;

10. Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to the Plaintiffs, Class Representative, and members of the Nationwide and California Classes;

11. Award Plaintiffs, Class Representative, and members of the Nationwide and California Classes all pre-judgment interest and post-judgment interest available under law;

12. Award Plaintiff, Class Representative, and members of the Nationwide and California Classes any other appropriate equitable relief;

13. Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that the Defendant has remedied the practices complained of herein and are determined to be in full compliance with the law; and

14. Award additional and further relief as this Court may deem just and proper.

**JURY DEMANDED**

Plaintiff demands a trial by jury on all issues triable of right by jury.

SEMNAR & HARTMAN, LLP

DATED: 9-21-17

*/s/ Jared M. Hartman*
JARED M. HARTMAN, ESQ.
Attorneys for Plaintiff